**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **SUSAN MCKENNA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. W-23-CV-00703-ADA-DNM** |
| | § | |
| **KILLEEN INDEPENDENT SCHOOL DISTRICT,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ALAN D. ALBRIGHT, UNITED STATES DISTRICT JUDGE,**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636, FED. R. CIV. P. 72, and Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Killeen Independent School District's Motion for Summary Judgment (Dkt. No. 15). For the reasons that follow, the Court **RECOMMENDS** that Killeen Independent School District's Motion for Summary Judgment be **DENIED.**

## BACKGROUND

This lawsuit involves a deaf public school district employee who alleges that she was denied accommodations and discriminated against because of her disability and was retaliated against because of her filing of an EEOC complaint and her repeated requests for accommodation. Susan McKenna, who is deaf and primarily communicates using American Sign Language (ASL), worked as a Special Education teacher for Deaf and Hard of Hearing (DHH) students at Timber Ridge Elementary School in the Killeen Independent School District (KISD)

from June 2022 through mid-April 2023 under a one-year probationary contract. Dkt. No. 1 at 1; Dkt. No. 15, Ex. 2 at 5. The essential functions of her position included classroom management; implementing curriculum and individualized education programs (IEPs) for DHH students; participating in admission, review, and dismissal (ARD) meetings; assisting certain students with verbalization and enunciation; and serving as a case manager for assigned students. *Id.*, Ex. 2 at 9-10. McKenna alleges that she repeatedly requested a qualified ASL interpreter to assist with her job duties and to participate in staff communications, trainings, and meetings, but that a qualified interpreter was rarely, if ever, provided. Dkt. No. 1 at 2. She contends that this lack of support constituted a failure to accommodate her disability. Dkt. No. 17 at 10.

During the application process in May 2022, McKenna informed the principal that she was "hearing impaired" but could read lips. Dkt. No. 15, Ex. 16 at 1. She requested an ASL interpreter for the interview to avoid misunderstandings. *Id.* KISD provided an interpreter and asserts that, at that time, it had no reason to believe she was deaf or would require an interpreter throughout the school day. *Id.*, Ex. 2 at 4-5. McKenna later described herself as "profoundly deaf," while KISD states that she did not provide medical documentation demonstrating a substantial limitation in a major life activity during her employment. *Id.*, Ex. 27 at 3; *Id.*, Ex. 44 at 20. After she was hired on June 6, 2022, McKenna inquired about how to request interpreters for "large meetings," and later expanded her request to include "all meetings." *Id.*, Ex. 17 at 2-3. KISD states that it arranged interpreters for certain events, such as District Awareness Day and some trainings, and explored alternatives, including transcription, based on its understanding that she could follow spoken communication with some support. *Id.*, Ex. 1 at 6; Ex. 38 at 3.

According to KISD, when McKenna later requested interpreters in smaller group settings and began using student interpreters to meet her own communication needs, the principal

contacted Human Resources and scheduled an ADA interactive process meeting for November 17, 2022. *Id.*, Ex. 18 at 9; Ex. 1 at 7. McKenna canceled that meeting the day before, stating that she had filed an EEOC charge of discrimination and wished to pursue EEOC mediation instead. *Id.*, Ex. 2 at 11-12; Ex. 24 at 1-2.

McKenna alleges that after she filed a discrimination charge with the EEOC, KISD retaliated by subjecting her to heightened scrutiny and oversight beyond that applied to similarly situated colleagues. Dkt. No. 17 at 6. She further asserts that KISD issued write-ups related to a staff meeting she could not effectively access because of her disability and KISD's alleged failure to accommodate her. *Id.*, Ex. 1 at 14-15. KISD reprimanded her for purportedly not fulfilling her duties in providing IEP services. *Id.* at 21; *Id.*, Ex. 6 at 2.

On January 10, Tina Cole, Director for Recruitment and Retention for KISD, emailed Principal Tanya Dockery and employee Iris Felder, and asked: "[c]an you get an update from Ms. Dockery on how [McKenna is] doing? Are there any performance issues? . . . Basically, what's the latest with her? Any chance she's documented any performance issues?" *Id.*, Ex. 6 at 2-3. Principal Dockery replied, stating that McKenna "has had some issues with meeting IEP deadlines. She claimed a few weeks ago that this was because she was unable to fully access the IEP training at the beginning of the year because she did not have an interpreter when watching the pre-recorded training (which I believe has closed captioning)." *Id.* Principal Dockery also wrote that "[o]therwise, there have been no issues with her instructional performance," but remarked that McKenna "continues to ask for more and more accommodations," and asked whether, if McKenna chose to wait for mediation rather than clarify the accommodations needed, she could tell McKenna that KISD "will not be providing accommodations." *Id.* Based on these conversations, as of January 2023, after a full semester of school, the only performance issue was

McKenna's failure to meet deadlines allegedly related to her deafness and complaints that she was seeking accommodations for her deafness. McKenna's principal acknowledged there were no other performance issues.

An EEOC mediation occurred on February 6, 2023, and McKenna participated in an ADA interactive accommodation meeting with KISD on February 10, 2023, which was conducted virtually with closed captioning. Dkt. No. 15, Ex. 2 at 13. At that meeting, McKenna requested a full-time ASL interpreter for the entire school day, all oral communications (including with parents), professional development, and after-school meetings and events. *Id.*, Ex. 2 at 13-14; Ex. 26 at 1-2; Ex. 27 at 1-5. On April 10, 2023, KISD issued a written reasonable accommodation offer denying her request for a full-time interpreter but offering a videophone, interpreters at staff meetings and in-person professional development, closed captioning for online trainings, and remote access to ARD meetings. *Id*, Ex. 30 at 1-4. McKenna did not respond to this offer or submit medical documentation in connection with it. *Id.*, Ex. 2 at 16. McKenna contends that, rather than fully accommodating her disability, KISD escalated allegations about her performance and threatened future job opportunities, additional write-ups, and termination if she did not resign. Dkt. No. 1 at 2. KISD argues that McKenna's request for additional accommodations was not reasonable, asserting that a teacher who seeks a full-time interpreter to assume or transfer essential job functions is not a qualified individual with a disability, as this would shift those essential functions to another person rather than enable the teacher to perform them with accommodation. Dkt. No. 15 at 13-14.

Two days after KISD issued the accommodation offer, McKenna reported that she had been assaulted by a student. *Id.*, Ex. 31 at 1; Ex. 32 at 1-3. KISD's subsequent investigation concluded that McKenna had misrepresented the incident and that she injured herself while

pushing a large table toward a deaf or hard of hearing ("DHH") student. *Id.*, Ex. 40 at 3-4. KISD's investigator found that video footage shows McKenna pushing a table, but McKenna notes that KISD never produced this footage in discovery – and it was not included with KISD's Motion. *Id.*; Dkt. No. 17, Ex. 1 at 11. Instead, McKenna contends that two eyewitnesses, District employees Krystal Ayala and Samantha Coppersmith, provided statements contradicting the investigator's characterization, stating that the student started flipping tables and that a table landed on McKenna. Dkt. No. 15, Ex. 32 at 4-7.

Following the incident, a meeting was held with McKenna on April 13, 2023 to inform McKenna that KISD was contemplating recommending termination of her probationary contract. *Id.*, Ex. 41 at 3-4. The next day, she emailed a letter of voluntary resignation to KISD's Executive Superintendent of Human Resources. *Id.*, Ex. 34 at 1. In her email, McKenna wrote: "In response to your request, here is my formal resignation as of April 14, 2023, from Killeen ISD as a Teacher of the Deaf." *Id.* While KISD maintains that the resignation was wholly voluntary, McKenna contends that she was constructively discharged.

KISD maintains that during McKenna's employment she was not demoted, denied promotion, subjected to reduced pay or diminished job responsibilities, reassigned to menial work, or badgered or humiliated to force a resignation, and that she voluntarily resigned. *Id.*, Ex. 1 at 9. McKenna, in turn, alleges that her resignation occurred in the context of threats and discriminatory and retaliatory treatment and brings this lawsuit seeking economic and noneconomic damages, as well as declaratory, injunctive, and other relief, under Titles I and V of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act to address what she asserts were unlawful failures to accommodate and retaliation based on her disability. Dkt. No. 1 at 2-3.

## RELEVANT LAW

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

In determining whether a genuine dispute of material fact exists, the Court considers "all of the evidence in the record" but refrains from making credibility determinations or weighing the evidence. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted). Although all reasonable inferences must be drawn in favor of the nonmoving party, that party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence." *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotations omitted). Rather, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party. *Id.* at 399 (citing *Anderson*, 477 U.S. at 248).

If the nonmoving party bears the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by showing that the record lacks sufficient evidence to support an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 322–23. The burden then shifts to the nonmoving party, who must go beyond the pleadings and, "by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting FED. R. CIV. P. 56(e)). The Court has no duty to try or decide factual issues; its only duty is to determine whether there is an issue of fact to be tried. *Chappell v. Goltsman*, 186 F.2d 215 (5th Cir. 1950). If a genuine dispute of material fact exists such that a reasonable factfinder could resolve the issue in favor of the party opposing summary judgment, summary judgment must be denied. *National Hygienics, Inc. v. Southern Farm Bureau Life Ins. Co.*, 707 F.2d 183, 186 (5th Cir. 1983).

**A. Americans with Disabilities Act and Rehabilitation Act**

The Americans with Disabilities Act ("ADA") and the Rehabilitation Act impose an "affirmative obligation to make reasonable accommodations for disabled individuals" upon public entities. *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). The ADA defines a disability as "(1) a mental or physical impairment that substantially limits one or more major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998) (quoting 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)). Major life activities include "such tasks as 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Id*. (quoting 29 C.F.R. § 1630.2(i)).

The ADA prohibits employers from discriminating against a qualified individual on the basis of disability. *Mueck v. La Grange Acquisitions*, LP, 75 F.4th 469, 483 (5th Cir. 2023) (citing 42 U.S.C. § 12112(a)). The failure-to-accommodate theory augments the last element of the general ADA claim such that discrimination "by reason of his disability" is established "by showing that the disability and its consequential limitations were known by the covered entity, and the entity failed to make reasonable accommodations." *Valentine v. Collier*, 993 F.3d 270,

290 (5th Cir. 2021) (first quoting *Windham v. Harris County*, 875 F.3d 229, 235 (5th Cir. 2017); and then citing *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020)). A failure-to-accommodate claim requires a showing that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021). Under a failure-to-accommodate theory, the final element of an ADA claim—discrimination by reason of a disability—is satisfied by showing that the covered entity knew of the disability and its resulting limitations but failed to provide reasonable accommodations. *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021). This knowledge requirement may be met in either of two ways: (1) the plaintiff "specifically identif[ies] the disability and resulting limitations" and requests an accommodation in "direct and specific" terms, or (2) "the disability, resulting limitation[s], and necessary reasonable accommodation" are "open, obvious, and apparent" to the entity's relevant agents. *Windham v. Harris County*, 875 F.3d 229, 237 (5th Cir. 2017) (citation omitted); *Carter v. City of Shreveport*, 144 F.4th 809, 814 (5th Cir. 2025) (citation omitted).

Once an accommodation is requested, the employer must engage in an "interactive process" with the employee with "the goal of finding an appropriate accommodation for the limitation." *Jackson v. Blue Mt. Prod. Co.*, 761 F. App'x 356, 360 (5th Cir. 2019) (citation omitted). An employer that "fails to engage in the interactive process in good faith violates the ADA." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) (citation omitted). If, however, the breakdown in the interactive process is "traceable to the employee," there is no violation. *Id.* at 481. (citation omitted).

An employer subject to a claim of disability discrimination can avoid liability if the requested accommodation poses an undue hardship on the operation of the program. *Narayanan v. Midwestern State Univ.*, No. 22-11140, 2023 U.S. App. LEXIS 26997, at *8-9 (5th Cir. Oct. 11, 2023) (citation omitted); *See also* 42 U.S.C. § 12111(10). Similarly, the ADA "does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Kakoolaki v. Galveston Indep. Sch. Dist.*, No. 24-40710, 2025 U.S. App. LEXIS 7745, at *6 (5th Cir. Apr. 2, 2025) (citation omitted).

**B. Retaliation Claim under the ADA**

The ADA prohibits employers from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). When a plaintiff relies on indirect evidence of retaliation, courts apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973*); Nall v. BNSF Ry. Co.,* 917 F.3d 335, 349 (5th Cir. 2019).

To establish a prima facie case of retaliation under the ADA, the plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (citing *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348-49 (5th Cir. 2019)). If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Id*. If the employer satisfies this burden of production, the plaintiff must then

demonstrate that the proffered reason is pretext for retaliation and that, "but for" the protected activity, the adverse employment action would not have occurred. *Id.*

## ANALYSIS

There are significant factual disputes about the extent of KISD's knowledge regarding McKenna's hearing impairment, when it had such knowledge, McKenna's requests for accommodation, the parties' participation in the interactive process required under the ADA, whether the requested accommodations were reasonable, what the essential functions of the job were, and whether McKenna could perform the essential functions of the position with reasonable accommodations. As a result, the Court concludes there are genuine issues of material fact as to each of McKenna's claims such that summary judgment is not proper.

### A. Americans with Disabilities Act and Rehabilitation Act

Most of the elements of McKenna's prima facie case of direct disability discrimination remain in dispute. First, McKenna claims that she suffers from profound deafness, which substantially interferes with major life activities. Dkt. No. 1 at 5, 7. KISD, however, contends that it was unaware of the extent of her deafness. Dkt. No. 15 at 16. Despite this, the multiple accommodation options discussed between KISD and McKenna and the series of accommodation meetings would allow a reasonable jury to conclude that KISD knew of both her disability and its severity.

In addition, McKenna maintains that she was qualified for her position and could perform the essential functions of her job with reasonable accommodation, whereas KISD argues that she could not perform certain duties without transferring them to a full-time interpreter, despite Principal Dockery's email stating that McKenna had no performance concerns. Dkt. No. 1 at 11; Dkt. No. 15 at 13-14. The facts give rise to at least the inference that KISD was well aware of

McKenna's limitations and needs long before her resignation (as early as when she was interviewed) and that there was no complaint or even suggestion that they could not be accommodated without transferring her duties. Moreover, the facts suggest that McKenna's performance was largely positive given the lack of any complaint addressed in the January 10, 2023 email exchange KISD included with its motion for summary judgment.

Consequently, a genuine dispute remains as to whether KISD was aware that McKenna has a disability, what constitutes an appropriate accommodation, whether the accommodation offered was reasonable, whether it was actually offered, whether both parties complied with their duties to participate in the interactive process, what the essential functions of the job were, and whether McKenna could perform those essential functions with a reasonable accommodation. Because an essential element of McKenna's failure-to-accommodate claim remains in dispute, summary judgment is improper.

**B. Retaliation Claim**

McKenna asserts that, by speaking with coworkers regarding an EEOC claim and by making multiple accommodation requests from the time she applied for the position, she engaged in protected activities. Dkt. No. 17 at 18-19. The Fifth Circuit has noted that the filing of an EEOC complaint constitutes a protected activity. *Carter v. Target Corp.*, 541 F. App'x 413, 418 (5th Cir. 2013). It stands to reason, therefore, that McKenna's conversations with coworkers regarding this claim would also be protected. Similarly, the Fifth Circuit has stated that "[i]t is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity." *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008).

There is a genuine factual dispute as to the circumstances of McKenna's resignation and whether constructive discharge occurred. With respect to constructive discharge claims, the Fifth Circuit in *Aryain v. Wal-Mart Stores, Texas, LP*, explained that, "[i]n certain circumstances, a constructive discharge can be considered a tangible employment action," and "whether an employer's actions constitute a constructive discharge" turns on whether "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Aryain v. Wal-Mart Stores, Texas, LP*, 534 F.3d 473, 480 (5th Cir. 2008) (quoting in part *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 & 147 n.8 (2004)). In conducting a constructive discharge inquiry, the Fifth Circuit considers whether there is evidence to support the following six factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not. *Id.* at 481 (citation omitted).

This prima facie showing shifts the burden to Defendant to rebut with a legitimate, nondiscriminatory reason for termination. In this case, there remains a genuine dispute as to whether McKenna was subject to badgering, harassment, or humiliation by KISD calculated to encourage her resignation. There is also a factual dispute as to whether McKenna would have been able to do her job had a reasonable accommodation been offered. While the Parties do not dispute that McKenna resigned, there remains a dispute as to whether she was unfairly targeted and punished by KISD's administrators as a result of her EEOC dispute and requests for accommodation, so as to constitute badgering or harassment meant to induce a resignation. *E.g.*, Dkt. No. 17, Ex. 6 at 2-3. While KISD contends that, even if McKenna were fired, it would have

had a legitimate, nondiscriminatory reason for the firing, McKenna has demonstrated that there is at least a fact issue whether any claims of inability to perform the essential functions of her job or the investigations of her performance may have been pretextual. Dkt. No. 15 at 21-22. Therefore, it is proper to leave the credibility determination of each party's claims to a jury.

## RECOMMENDATION

A genuine dispute of material fact remains in this case because KISD and McKenna continue to disagree on key elements of McKenna's claims, including whether KISD knew of the extent of McKenna's disability, whether she could perform her job functions with reasonable accommodations, and whether the offered accommodations were adequate or burdensome. The record contains evidence – such as accommodation discussions and positive performance indications – that could lead a reasonable jury to find in McKenna's favor on her failure-to-accommodation and retaliation claims. There also remain factual disputes about whether KISD and McKenna engaged in the interactive process and what the essential, immutable functions of her job were. Additionally, conflicting evidence exists as to McKenna's resignation that raises questions about whether she was constructively discharged in retaliation for engaging in protected activities. Consequently, credibility and factual determinations remain that must be resolved by a jury. For the above-stated reasons, the Court **RECOMMENDS** that KISD's Motion for Summary Judgment be **DENIED**.

## OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's

failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(l)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).

**SIGNED** this 29th day of July, 2026.

DAN N. MACLEMORE
UNITED STATES MAGISTRATE JUDGE